# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| IN RE MINDBODY, INC., | ) | CONSOLIDATED |
| STOCKHOLDER LITIGATION | ) | C.A. No. 2019-0442-KSJM |

## MEMORANDUM OPINION

Submitted: June 5, 2023
Decided: November 15, 2023

Joel Friedlander, Jeffrey M. Gorris, Christopher M. Foulds, FRIEDLANDER & GORRIS, P.A., Wilmington, Delaware; Gregory V. Varallo, Andrew E. Blumberg, BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP, Wilmington, Delaware; Jeroen van Kwawegen, BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP, New York, New York; *Co-Lead Counsel for Lead Plaintiffs and Petitioners Luxor Capital Partners, L.P., Luxor Partners Offshore Master Fund, LP, Luxor Wavefront, LP, and Lugard Road Capital Master Fund, LP.*

Lisa A. Schmidt, Robert L. Burns, Matthew D. Perri, John M. O'Toole, RICHARDS, LAYTON & FINGER, P.A., Wilmington, Delaware; Matthew Solum, P.C., John Del Monaco, Jeffrey R. Goldfine, Jacob M. Rae, KIRKLAND & ELLIS LLP, New York, New York; *Counsel for Defendants Richard Stollmeyer, Vista Equity Partners Management, LLC, Torreys Parent, LLC, and Torreys Merger Sub, Inc., and Respondent Mindbody, Inc.*

**McCORMICK, C.**

This stockholder class action arises from the 2019 acquisition of Mindbody, Inc. by Vista Equity Partners Management, LLC for $36.50 per share. On March 21, 2023, the court issued a post-trial opinion holding Mindbody's former CEO and Vista jointly and severally liable to the class for damages in the amount of $1 per share. Closing a chapter, this decision resolves the parties' disputes over the form of final order and judgment. The parties' chief disagreement concerns whether the court should apply a settlement credit of $27 million toward the final damages award. This decision holds that the non-settling defendants are not entitled to a $27 million settlement credit. The other major clash concerns whether the lead plaintiffs in the fiduciary action, who also petitioned for appraisal of their shares, can elect to collect the merger consideration and class remedy and, if so, what effect the election has on the appraisal action. This decision holds that the appraisal petitioners can elect to receive the merger consideration and class remedy and deconsolidates the fiduciary and appraisal actions to permit immediate appeal of the post-trial decision. Lastly, this decision addresses open issues concerning interest, costs, and attorney's fees.

## I.    FACTUAL BACKGROUND

As described in greater detail in the March 21, 2023 Post-Trial Memorandum Opinion (the "Post-Trial Opinion"),[1] former Mindbody stockholders brought this class action challenging the all-cash acquisition of Mindbody by Vista for $36.50 per share. The lead plaintiffs are a group of former Mindbody stockholders referred to as

---

[1] *In re Mindbody, Inc. S'holder Litig.*, 2023 WL 2518149 (Del. Ch. Mar. 15, 2023) ("Post-Trial Op.").

"Luxor."[2]  Luxor also petitioned for appraisal pursuant to 8 *Del C.* § 262 with another group of former Mindbody stockholders referred to as "Blue Mountain"[3] (and with Luxor, the "Appraisal Petitioners").[4]  The court consolidated the fiduciary and appraisal actions on October 2, 2019.[5]

After fact discovery closed, Luxor filed the Second Amended Verified Consolidated Class Action Complaint (the "Complaint").[6]  As amended, the Complaint asserted breach of fiduciary duty claims against Mindbody's former CEO, Richard Stollmeyer, and the Mindbody board nominee of private equity fund Institutional Venture Partners ("IVP"), Eric Liaw, alleging that the two conspired in their efforts to tilt the sale process in Vista's favor.  The Complaint also asserted claims for aiding and abetting against IVP and Vista.  Liaw, IVP, and Vista moved to dismiss, and Stollmeyer moved for summary judgment.[7]  The court denied the motions.[8]

---

[2] "Luxor" is Luxor Capital Partners, L.P., Luxor Capital Partners Offshore Master Fund, LP, Luxor Wavefront, LP, and Lugard Road Capital Master Fund, LP.

[3] "Blue Mountain" is Blue Mountain Credit Alternatives Master Fund L.P., BlueMountain Logan Opportunities Master Fund, L.P., BlueMountain Foinaven Master Fund L.P., BlueMountain Fursan Fund L.P., and BlueMountain Kicking Horse Fund L.P.

[4] *See Luxor Cap. P'rs v. Mindbody*, 2019-0293-KSJM.

[5] C.A. No. 2019-0442-KSJM, Dkt. 37.  All docket ("Dkt.") citations refer to C.A. No. 2019-0442-KSJM.

[6] Dkt. 336 ("Compl.").

[7] *See* Dkt. 338 (Liaw and IVP Mot. to Dismiss); Dkt. 342 (Vista Mot. to Dismiss); Dkt. 345 (Stollmeyer Mot. for Summary Judgment).

[8] *See* Dkt. 398 (*In re Mindbody, Inc., S'holder Litig.*, 2021 WL 5565172 (Del. Ch. Nov. 29, 2021)); Dkt. 399 (*In re Mindbody, Inc., S'holder Litig.*, 2021 WL 5564687 (Del. Ch. Nov. 29, 2021)); Dkt. 401 (*In re Mindbody, Inc., S'holder Litig.*, 2021 WL 5834263 (Del. Ch. Dec. 9, 2021)).

On December 17, 2021, the court granted Luxor's unopposed motion to certify the "Class" comprising:

> all holders of Mindbody . . . common stock as of the closing of the merger with affiliates of Vista . . . on February 15, 2019 ("Closing"), whether beneficial or of record, including their legal representatives, heirs, successors in interest, transferees and assignees of all such foregoing holders, but excluding (i) defendants in this action, (ii) any person who is, or was at the time of Closing, an officer, director, or partner of Mindbody, Vista, or [IVP], (iii) the immediate family members, meaning the parents, spouse, siblings, or children, of any of the foregoing, (iv) any trusts, estates, entities, or accounts that held Mindbody shares for the benefit of any of the foregoing, and (v) the legal representatives, heirs, successors in interest, successors, transferees, and assigns of the foregoing[.][9]

On January 18, 2022, Luxor moved to sever and stay its claims against Liaw and IVP because they had agreed in principle to settle those claims for $27 million.[10] The court granted the motion on February 8.[11]

On February 26, 2022, Luxor, Liaw, and IVP submitted their Stipulation and Agreement of Settlement (the "Settlement Agreement").[12] As reflected in the Settlement Agreement, Luxor agreed to release all claims on behalf of the Class arising out of the allegations in the Complaint relating to the Merger against Liaw and IVP (the "Settling Defendants").[13] In exchange, the Settling Defendants agreed

---

[9] Dkt. 406 ¶ 1.

[10] Dkt. 417.

[11] Dkt. 432.

[12] Dkt. 451.

[13] Settlement Agr. ¶ 1(x).

to pay the Class $27 million. The Settlement Agreement required that the prospective judgment include a bar order preventing "any claims for contribution under 10 *Del. C.* § 6304(b)" based on the released claims against the Settling Defendants.[14] The bar order stated that:

> pursuant to 10 *Del. C.* § 6304(b), any joint damages recoverable against all other alleged tortfeasors, including Non-Settling Defendants, will be reduced by the greater of (a) the Settlement Amount, and (b) the pro rata share of the responsibility for such damages, if any, of Settling Defendants, should it be determined that any of the Settling Defendants are joint tortfeasors.[15]

At a June 8, 2022 hearing, the court approved the settlement including the bar order and awarded $8,556,142.95 in attorney's fees and expenses. The awarded expenses included $666,142.95 in expenses incurred through January 18, 2022.[16]

The remaining claims against Stollmeyer and Vista (the "Non-Settling Defendants") marched on in parallel toward trial, which took place over eight days between February 28 and March 9, 2022.[17] The parties then completed post-trial briefing and oral argument.

In the final footnote of their post-trial answering brief, the Non-Settling Defendants asserted that any compensatory damages awarded to the Class "must account for the settlement of Luxor's claims against Liaw and IVP[.]"[18]

---

[14] Settlement Agr. ¶ 18.

[15] *Id.*

[16] Dkt. 481.

[17] *See* Dkts. 461–468 (Trial Tr.).

[18] Dkt. 485 at 121 n.493.

4

The Post-Trial Opinion found the Non-Settling Defendants jointly and severally liable to the Class for $1 per share. The court held Stollmeyer liable for $1 per share for breaching fiduciary duties in connection with the sale process (the "process damages"). The court held Stollmeyer and Vista jointly liable for $1 per share for breaching fiduciary duties in connection with the disclosures and for aiding and abetting in those breaches (the "disclosure damages" or "*Weinberger* damages"). The court held, however, that the class is "not entitled to a double recovery" and that "[a]ll that the class can recover is $1 per share."[19]

The Post-Trial Opinion ordered the Non-Settling Defendants to pay costs and further ordered payment of prejudgment interest in the amount of 5% over the Federal Reserve discount rate compounded quarterly on the damages award.[20]

The Post-Trial Opinion directed the parties to confer on a form of final order.[21] The parties failed to agree and filed cross motions for entry of a final order and judgment.[22] Co-Lead Counsel for Luxor ("Co-Lead Counsel") also moved for an award of attorney's fees. The motions were fully briefed as of May 30, 2023,[23] and the court heard oral argument on June 5, 2023.[24]

---

[19] Post-Trial Op., 2023 WL 2518149, at *47.

[20] *Id.* at *47–48.

[21] *Id.* at *48.

[22] Dkt. 499 (Pls.' Mot.); Dkt. 503 (Defs.' Mot.).

[23] Dkt. 499 ("Pls.' Opening Br."); Dkt. 504 ("Defs.' Opening Br."); Dkt. 509 ("Pls.' Reply Br."); Dkt. 511 ("Defs.' Reply Br.").

[24] Dkt. 515 (June 5, 2023 Hr'g Tr.).

## II. LEGAL ANALYSIS

This analysis addresses five sets of issues raised by the parties in the following order. First, are the Non-Settling Defendants entitled to a $27 million settlement credit toward the $1-per-share damages award? Second, can the Appraisal Petitioners elect the Class remedy and, if so, what is the effect of that election? Third, how should the court calculate interest on the damages award? Fourth, can Co-Lead Counsel recover costs previously reimbursed from the settlement fund? Fifth, what amount of attorney's fees should the court award Co-Lead Counsel?

### A. The Settlement Credit

The Delaware Uniform Contribution Among Tortfeasors Act ("DUCATA") establishes the legal framework applicable when a plaintiff releases only some joint tortfeasors through settlement. DUCATA codifies a right of contribution among joint tortfeasors[25] and defines "joint tortfeasors" as "[two] or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them."[26] Under DUCATA, such a release does not discharge the non-settling joint tortfeasors, but rather, reduces the claim against the other tortfeasors "in the amount of the consideration paid for the release, or in any amount or proportion by which the release provides that the total claim shall be reduced, if greater than the consideration paid."[27]

---

[25] 10 *Del. C.* § 6302(a) ("The right of contribution exists among joint tortfeasors.").

[26] 10 *Del. C.* § 6301.

[27] 10 *Del. C.* § 6304(a).

The Non-Settling Defendants ask that the court apply DUCATA to reduce the total damages award in the amount of the $27 million settlement consideration. Luxor does not dispute that if the Settling Defendants are joint tortfeasors, then the Non-Settling Defendants are entitled to a credit equal to the full amount of the settlement consideration, $27 million. Luxor argues, however, that a settlement credit is inappropriate for three reasons. First, Luxor contends that the Non-Settling Defendants waived their right to seek a credit by failing to raise the argument before their post-trial answering brief.[28] Second, Luxor argues that the trial record does not support a finding that the Settling Defendants were joint tortfeasors.[29] Third, Luxor maintains that the doctrine of unclean hands bars the settlement credit.[30] Because this decision concludes that the Non-Settling Defendants waived their right to seek a settlement credit, the court does not reach Luxor's second or third arguments.

"Waiver is fundamentally an issue of fairness: the belated presentation of an argument can deprive the opposing party of notice and the opportunity to respond."[31]

This court has struggled to define when a defendant has waived its ability to seek a settlement credit. That struggle stems in part from tension between the

---

[28] *See* Pls.' Opening Br. at 3–11; Pls.' Reply Br. at 9–17; Defs.' Opening Br. at 25–30; Defs.' Reply Br. at 13–18.

[29] *See* Pls.' Opening Br. at 11–16; Pls.' Reply Br. at 17–19; Defs.' Opening Br. at 12–24; Defs.' Reply Br. at 7–13.

[30] *See* Pls.' Opening Br. at 17–20; Pls.' Reply Br. at 19–22; Defs.' Opening Br. at 30–31; Defs.' Reply Br. at 18–20.

[31] *Jung v. El Tinieblo Int'l, Inc.*, 2022 WL 16557663, at *9 (Del. Ch. Oct. 31, 2022) (citations omitted).

competing desires of avoiding trial by ambush and promoting fair and orderly proceedings. On the one hand, the court enforces the waiver doctrine to prevent prejudice by surprise. On the other hand, the court has acknowledged that forcing defendants to present evidence on joint tortfeasor status at a bench trial puts them in the awkward position of arguing that they should not be held liable, but if they are, they took the wrongful actions in tandem with other joint tortfeasors.[32] In light of this awkwardness, the court has permitted parties to pursue claims for contribution after the court has made liability determinations.[33]

Allowing litigants to pursue claims for contribution post-trial deviates from the norm in jury trials. In *Ikeda v. Molock*, the Delaware Supreme Court held that a defendant seeking a damages award based on relative fault must file a cross-claim against settling tortfeasors before trial to allow the jury to make factual findings related to that claim.[34] The Supreme Court reasoned that a "jury may not properly

---

[32] *See Teachers' Ret. Sys. of Louisiana v. Greenberg*, C.A. No. 20106-VCS, Dkt. 460 at 45:1–11 (Del. Ch. June 13, 2007) (TRANSCRIPT) ("That's an awkward, weird trial to have . . . . I will not have some sort of bifurcated thing where I get to have a week, you know, with one face of Strine, who hears of the evidence about no one did anything wrong, and then [] the second face of Strine and the second week shows up and has to hear about how awful [defendants] are but that their three bosses didn't know about it."); *see also Odyssey P'rs, L.P. V. Fleming Cos., Inc.*, 1997 WL 38134, at *3 (Del. Ch. Jan. 24, 1997) (denying leave to assert a third-party claim for contribution against a fifth director defendant before trial when the request "certainly represent[ed] an attempt to use the joinder of party rules to gain tactical advantage").

[33] *See In re Rural/Metro Corp. S'holders Litig.*, 102 A.3d 205, 245 (Del. Ch. 2014).

[34] *See Ikeda v. Molock*, 603 A.2d 785, 787 (Del. 1991) ("Accordingly, the filing of a cross-claim is a prerequisite to the apportionment of liability between joint tort-feasors based upon relative degrees of fault.").

fulfill its role as trier of fact unless the questions to be decided by the jury are litigated at trial[,]" where those questions include the relative degree of fault among joint tortfeasors.[35]

In *In re Rural/Metro Corp. Stockholders Litigation*, this court addressed whether the requirement of *Ikeda* applies in bench trials.[36] There, a group of defendants settled on the eve of trial. The remaining defendant, RBC, filed a cross-claim against the settling defendants requesting that the court reduce the damages recoverable against RBC under DUCATA based on their degrees of relative fault. The cross-claim did not allege that the settling defendants had committed wrongdoing. The cross-claim also did not allege that the settling defendants were joint tortfeasors, and RBC did not advance that theory at trial. Yet when the plaintiff argued that RBC had waived its right to argue in post-trial proceedings that the settling defendants were joint tortfeasors, the court disagreed. In arriving at this holding, Vice Chancellor Laster reasoned that although *Ikeda* requires a formal joint tortfeasor cross-claim in a jury trial, "the same strictures do not apply in a bench trial[.]"[37] Rather than having to argue a joint tortfeasor theory at trial, RBC "simply had to do so based on the record created at trial and in light of the factual findings" in the post-trial opinion.[38] The Delaware Supreme Court affirmed.[39]

---

[35] *Id.*

[36] 102 A.3d 205, 244–45 (Del. Ch. 2014).

[37] *Id.* at 244.

[38] *Id.* at 245.

[39] *RBC Cap. Mkts., LLC v. Jervis*, 129 A.3d 816, 871 (Del. 2015)

Under *Rural/Metro*, therefore, the Non-Settling Defendants' failure to prove joint tortfeasor status at trial does not automatically bar them from seeking a DUCATA settlement credit post-trial. Still, the question remains whether the waiver doctrine should preclude a settlement credit under the circumstances of this case.

The court is forced to conclude that the Non-Settling Defendants waived their right to seek judgment reduction under DUCATA by not preserving the issue in any manner whatsoever before trial. In *Rural/Metro*, RBC both filed a crossclaim for contribution and raised the issue in the pre-trial stipulation and order. These actions, though relatively ministerial, were the bare minimum necessary to place the plaintiffs on notice that RBC intended to claim a settlement credit, which gave the plaintiffs the opportunity to defend against this possibility. Here, by contrast, the Non-Settling Defendants did not attempt to assert a crossclaim before trial or raise the issue in pre-trial briefing, the pretrial order, or during the pretrial conference. Rather, they did not raise the issue until the last footnote (footnote 493) on the very last page (page 121) of their very last post-trial brief.[40] To Luxor, the Non-Settling Defendants' failure to raise DUCATA issues timely cleared the path for a trial strategy that aggressively implicated both Liaw and IVP, including in cross examinations of key witnesses such as Liaw, Stollmeyer, and Professor Jesse Fried.

At trial, Luxor elicited testimony that would speak to the Settling Defendants' joint tortfeasor status. Luxor showed that IVP's Mindbody investment represented

---

[40] Dkt. 485.

an unrealized gain of $68 million and that IVP was looking to liquidate its holdings.[41]

Luxor questioned Liaw about his conversation with Stollmeyer immediately after the

Audit Committee discussed the impact of reduced guidance for Q4.[42] Luxor also

offered evidence that Liaw advocated to retain Qatalyst as Mindbody's financial

adviser because Qatalyst "emphasized its relationship with Vista and recommended

a quick sale process."[43] Luxor advanced its theory in post-trial briefing that

Stollmeyer was incentivized to push for a sale at a time when Liaw was still on the

Board.[44] This testimony led the court to conclude that Liaw's role in the sale process

was "rife with the potential for conflict."[45] It is hard to believe that Luxor would have

gone so aggressively after Liaw and IVP had they known that they would have be

stuck later defending the actions of Liaw and IVP to avoid a settlement credit under

DUCATA.

Luxor cites *Advanced Fluid System, Inc. v. Huber*, and that case provides some

support for finding waiver here.[46] *Advanced Fluid* addressed Pennsylvania's

analogous joint tortfeasor statute within the context of a trade secrets case in which

one co-defendant settled before trial. When the non-settling defendants failed to raise

[41] Post-Trial Op., 2023 WL 2518149, at *7.

[42] *Id.* at *18–19.

[43] *Id.* at *22.

[44] *See, e.g.*, Dkt. 477 (Pls.' Opening Post-Trial Br.) at 9–13; *see also* Dkt. 484 (Pls.' Answering Post-Trial Br.) at 9 ("Defendants have no answer to Stollmeyer's behind-the-scenes conniving with Liaw to encourage a quick sale.").

[45] Post-Trial Op., 2023 WL 2518149, at *6.

[46] 381 F.Supp.3d 362 (M.D. Pa. 2019), *aff'd*, 958 F.3d 168 (3d Cir. 2020).

11

the possibility of a settlement credit during the bench trial or in post-trial briefing, the federal district court held that they had waived the right to seek a set-off. The Third Circuit affirmed.[47] To be sure, *Advanced Fluid* is not binding authority, but it illustrates that failing to timely assert DUCATA claims can have harsh consequences.

There is parity in finding that the Non-Settling Defendants waived their right to a settlement credit, given that the court held that Luxor waived claims for aiding abetting in process breaches against Vista. In the Post-Trial Opinion, the court held that Luxor waived the process-based claims against Vista by failing to adequately preserve them prior to trial.[48] The court was convinced that Luxor's failure to assert claims for process breaches against Vista meant that Vista was not prepared to defend against them. The corollary is true here—the Non-Settling Defendants' failure to raise DUCATA issues prior to trial meant that Luxor was not on notice of the need to defend against these arguments. Given this prior reasoning, a conclusion that Vista did *not* waive its right to a settlement credit by failing to preserve it prior to trial would seem to apply a double standard. The court finds waiver.

Contrary to the Non-Settling Defendants' argument, this outcome does not result in a windfall to the Class. DUCATA makes clear that adversarial principles

---

[47] *Advanced Fluid Sys., Inc. v. Huber*, 958 F.3d 168 (3d Cir. 2020).

[48] *See* Post-Trial Op., 2023 WL 2518149, at *42–43.

apply to judgment debtors seeking a settlement credit.[49] This aspect of the statute reflects a policy determination favoring the injured plaintiff "rather than an admitted or adjudged [tortfeasor] bearing less than the full cost of his or her negligent conduct."[50] Here, the Non-Settling Defendants waived their DUCATA arguments by failing to take minimal steps to preserve them.

## B. Appraisal Petitioners' Remedy

The parties dispute whether the Appraisal Petitioners can elect to receive Class damages absent Mindbody's approval.[51] If the Appraisal Petitioners can elect the Class remedy, then the court must determine the effect of that election on the appraisal proceedings, including whether the appraisal proceedings should be deconsolidated to permit immediate appeal.

### 1. Availability Of The Class Remedy

The Delaware courts addressed an appraisal petitioner's ability to elect to receive a class remedy for fiduciary breach in *Cede & Co. v. Technicolor, Inc.*[52] and *In re Dole Food Co., Inc. Stockholder Litigation.*[53]

---

[49] *See, e.g.*, 10 *Del. C.* §§ 6304(a), (b) (placing the burden of proving joint tortfeasor status on the judgment debtor); *Med. Ctr. of Del., Inc. v. Mullins*, 637 A.2d 6, 8 (Del. 1994).

[50] *Mullins*, 637 A.2d at 10 (citing *State Farm Mut. Auto. Ins. Co. v. Nalbone*, 569 A.2d 71, 75 (Del. 1989)).

[51] *See* Defs.' Opening Br. at 35–37; Defs.' Reply Br. at 21–24; Pls.' Reply Br. at 24–25.

[52] 542 A.2d 1182 (Del. 1988).

[53] 2015 WL 5052214 (Del. Ch. Aug. 27, 2015).

In *Cede,* a stockholder commenced an appraisal proceeding related to a controller squeeze-out merger. During discovery, the stockholder uncovered evidence of the directors' fiduciary breaches and brought a class action for breach of fiduciary duties seeking rescissory damages. The Delaware Supreme Court affirmed this court's finding that the stockholder had standing to pursue the claims for fiduciary breach, holding: "Fairness and consistency require equal recourse for a former shareholder who accepts a cash-out offer in ignorance of a later-discovered claim against management for breach of fiduciary duty and a shareholder who discovers such a claim after electing appraisal rights."[54]

The Supreme Court also held that the stockholder's appraisal and fiduciary claims should be consolidated for trial and that the stockholder did not have to elect a remedy prior to trial. The court concluded by acknowledging that consolidation may impose "certain procedural difficulties" on this court, but that the opposite result would impose perverse incentives on defendants while disadvantaging potential stockholders who seek to vindicate their rights.[55]

Although the court allowed the stockholder to pursue simultaneously claims for appraisal and fiduciary breach, the court described the claims as "alternative causes of action[,]"[56] observed that the stockholder would be limited to a "single

---

[54] *Cede,* 542 A.2d at 1188.

[55] *Id.* at 1192.

[56] *Id.* at 1189; *see also id.* at 1191–92 (describing the causes of action as "in the alternative to").

14

recovery judgment[,]"[57] and noted that a recovery on the claim for breach of fiduciary duty could "moot" the appraisal petition.[58]

In *Dole*, Vice Chancellor Laster determined post-trial that a class action stockholder-plaintiff had proven under the entire fairness standard that the controller and his colleague breached their fiduciary duties.[59] Consistent with *Cede*, the Vice Chancellor had consolidated the fiduciary and appraisal claims for trial. Post-trial, the Vice Chancellor awarded a "fairer price" remedy to the class members, resulting in an incremental award of 20% of the deal price.[60] Noting that the appraisal petitioners were members of the defined class, the Vice Chancellor concluded that they were "entitled to the remedy provided by this decision."[61] Echoing *Cede*, the Vice Chancellor observed that the appraisal petitioners could not receive a double recovery and that "the damages award potentially renders the appraisal claim moot."[62] He instructed the parties to meet and confer on a path forward.

Here, as in *Cede* and *Dole*, the court consolidated the fiduciary breach and appraisal claims for trial, the Appraisal Petitioners were not required to make a

---

[57] *Id.* at 1192.

[58] *Id.* at 1189.

[59] *Dole*, 2015 WL 5052214 at *1.

[60] *Id.* at *45.

[61] *Id.* at *47.

[62] *Id.*

binding election as to remedy before trial, and the Appraisal Petitioners are members of the Class.[63]

As a result, under *Cede* and *Dole*, the Appraisal Petitioners can elect to receive the merger consideration along with the Class's $1-per-share damages award.

### 2.      Effect Of Election

The conclusion that Appraisal Petitioners can elect the Class remedy gives rise to additional questions:  Can the Appraisal Petitioners pursue appraisal after electing the Class remedy?  What are the effects of the Post-Trial Opinion on fair value?  Should the court deconsolidate the actions?

The answer to the first issue—whether Appraisal Petitioners can have both options—requires a deeper dive into *Cede*, which changed how this court treats appraisal petitioners pursuing concurrent claims for fiduciary breach.  Before *Cede*, the court narrowly interpreted the appraisal statute to mean that an appraisal petitioner loses "for the time being all the substantial rights of a stockholder[,]" including receiving the merger consideration.[64]  An appraisal petitioners' right was considered "primarily that of a monetary claimant against the consolidated or surviving corporation" and "more nearly analogous to that of a creditor than to that of a stockholder."[65]

---

[63] Dkt. 405.  Both the Settling and Non-Settling Defendants consented to the class definition.  *Id.*

[64] *Southern Production Co. v. Sabath*, 87 A.2d 128, 134 (Del. 1952).

[65] *Id.*; *see also Dofflemyer v. W. F. Hall Printing Co.*, 432 A.2d 1198, 1202 (Del. 1981) (applying *Sabath*'s rationale to all-cash merger); *Braasch v. Goldschmidt*, 199 A.2d 760, 766–67 (Del. 1964) (holding that appraisal petitioner could not maintain

16

Then came *Cede*. There, the Delaware Supreme Court acknowledged the preceding cases but concluded that an appraisal petitioner did not lose standing to "assert a timely filed private cause of action premised upon a claim of unfair dealing, illegality, or fraud."[66] Citing to *Weinberger* and *Rabkin*, the high court highlighted the "disparate nature" of appraisal and entire fairness proceedings because they "serve different purposes and are designed to provide different, and not interchangeable, remedies."[67] Quoting *Weinberger*, the court observed that the appraisal remedy "may not be adequate in certain cases, particularly where fraud, misrepresentation, self-dealing, deliberate waste of corporate assets, or gross and palpable overreaching are involved[.]"[68] The court thus concluded that allowing appraisal petitioners to pursue claims for fiduciary breach was necessary to avoid a rule that would "effectively immunize" a fiduciary from answering to a claim for their wrongdoing.[69]

The court in *Cede* also rejected the defendants' argument that allowing the appraisal and fiduciary breach claims to proceed concurrently would be unfair to the defendants. The court held that since the plaintiff is "simply pleading alternative

---

representative action challenging merger as unfair because the effect of the appraisal election "was to convert the status of the plaintiffs therein from that of stockholders of the corporation to that of creditors thereof").

[66] *Cede*, 542 A.2d at 1188.

[67] *Id.* at 1186 (citing *Weinberger v. UOP, Inc.*, 457 A.2d 701, 714 (Del. 1983); *Rabkin v. Philip A. Hunt Chem. Corp.*, 498 A.2d 1099 (Del. 1985)).

[68] *Id.* at 1187 (quoting *Weinberger v. UOP, Inc.*, 457 A.2d 701, 714 (Del. 1983)).

[69] *Cede*, 542 A.2d at 1189.

17

causes of action," there is no risk of a double recovery.[70] The court viewed consolidation as "necessary to put [the plaintiff] in a position equivalent to the position it would arguably be in had defendants exercised 'complete candor' in disclosing all material information associated with the merger[.]"[71]

By permitting a stockholder to pursue appraisal claims as a "alternative" cause of action, and limiting a stockholder to a "single recovery," *Cede* aimed to minimize unfairness to the respondent—a stockholder may pursue many theories but may recover under just one. The implied message is that the choice of paths is binary.[72]

Applying the reasoning of *Cede* here, if the Appraisal Petitioners elect the Class remedy, then they must be treated as members of the Class. The members of the Class received $36.50 per share from Mindbody in the Merger and then received an additional $1 per share from the Non-Settling Defendants through the Post-Trial Opinion. If, however, the Appraisal Petitioners elect to pursue their appraisal claims, then they may not receive the Class remedy and the court will determine the fair value of the Appraisal Petitioners' shares.

The Non-Settling Defendants argue that this outcome is inconsistent with 8 *Del. C.* § 262 governing appraisal. More than 60 days after the date of a merger, Section 262 requires an appraisal claimant to obtain the corporation's consent before

---

[70] *Id.*

[71] *Id.* at 1191 (quoting *Weinberger*, 457 A.2d at 710).

[72] *Cede,* 542 A.2d at 1189; *see also id.* at 1191–92 (describing the causes of action as "in the alternative to").

18

it can withdraw its petition for appraisal.[73]  Although the Non-Settling Defendants'

correctly read the text of Section 262, their interpretation that it forecloses the

Appraisal Petitioners from electing the Class remedy ignores *Cede* and *Dole*.  As Class

members, the Appraisal Petitioners can opt to receive the same Merger consideration

as the Class.  If they opt to receive this consideration, then as discussed above, they

are barred from seeking appraisal as a double recovery.  Were it otherwise, then *Cede*

and *Dole*'s permission to appraisal petitioners to avoid making a binding election

before trial would be meaningless.  *Cede* and *Dole* contemplate that, upon court

approval, an appraisal claimant can elect to receive the merger consideration and

Class damages over the respondent's objection, and this decision follows that

precedent.

This decision does not resolve the second issue—the effect of the findings in

the Post-Trial Opinion on fair value.[74]  To be clear, the factual findings of the Post-

Trial Opinion bind the parties; they cannot relitigate them.  But it is premature to

assess the effect of those findings on fair value.  The court did not determine the fair

value calculation in the Post-Trial Opinion, and the court is not going to determine

fair value unless the Appraisal Petitioners elect to pursue appraisal.[75]

---

[73] *8 Del. C.* § 262(k).

[74] The Appraisal Petitioners ask the court to treat the $37.50 figure as a "floor" for a fair value determination, and the Non-Settling Defendants ask for a finding that fair value is less than $30.  *See* Pls.' Reply Br. at 26–29; Defs.' Opening Br. at 39–43; Defs.' Reply Br. at 29–33.

[75] *Compare In re Appraisal of Columbia Pipeline Gp., Inc.*, 2019 WL 3778370 (Del. Ch. Aug. 12, 2019), *with, In re Columbia Pipeline Gp., Merger Litig.*, 299 A.3d 393 (Del. Ch. 2023) [hereinafter *Columbia II*].

The answer to the last issue—whether to deconsolidate—is easy. Luxor asks the court to deconsolidate the fiduciary and appraisal actions to permit an appeal of the fiduciary action, which will inform its decision on whether to elect the Class remedy.[76] This approach makes a lot of sense. "It is well settled that 'the trial court has discretion to resolve scheduling issues and to control its own docket.'"[77] If the parties wish to appeal the Post-Trial Opinion, it would be helpful to do so promptly before this court values the Appraisal Petitioners' shares in an appraisal proceeding. A result at the appellate level could sway the appraisal petitioners to elect Class damages, or, in the alternative, give the parties more concrete findings to use in the appraisal proceedings. Either way, the benefits of consolidation have been achieved by trying the actions together; at this stage, it makes more sense to deconsolidate.

## C. Interest

The parties dispute a host of issues concerning interest: Is the Class entitled to interest on the nominal damages award?[78] Are the Appraisal Petitioners entitled to equitable interest on the withheld merger consideration if they elect the Class remedy.[79] Should the court should toll interest in the appraisal proceedings?[80]

---

[76] Pls.' Opening Br. at 24 –25; Pls.' Reply Br. at 30; Defs.' Opening Br. at 38–39; Defs.' Reply Br. at 24–28.

[77] *Coleman v. PricewaterhouseCoopers, LLC*, 902 A.2d 1102, 1107 (Del. 2006) (citations omitted).

[78] Defs.' Opening Br. at 33; Defs.' Reply Br. at 20–21; Pls.' Reply Br. at 23.

[79] Pls.' Opening Br. at 20–24; Pls.' Reply Br. at 24–31.

[80] Defs.' Opening Br. at 39 ("At a minimum, if the appraisal decision is delayed, the continued accrual of interest should be tolled.").

In Delaware, prejudgment interest is awarded as a matter of right and computed from the day payment is due.[81] "Prejudgment interest serves two purposes: first, it compensates the plaintiff for the loss of the use of his or her money; and, second, it forces the defendant to relinquish any benefit that it has received by retaining the plaintiff's money in the interim."[82] This court has "broad discretion, subject to principles of fairness, in fixing the rate to be applied."[83] "[A] court may, in its discretion, deny a plaintiff interest if he delayed prosecution of his claim."[84]

### 1. Prejudgment Interest On Nominal Damages

The Non-Settling Defendants argue that prejudgment interest should not accrue on the nominal damages award of $1 per share because the damages award was not "'readily ascertainable' prior to the [Post-Trial Opinion]"[85] and that "uncertainty" over the extent of the harm from the disclosure claims "precludes the application of [prejudgment] interest."[86]

---

[81] *Moskowitz v. Mayor and Council of Wilmington*, 391 A.2d 209, 210 (Del. 1978).

[82] *Brandywine Smyrna, Inc. v. Millennium Builders, LLC*, 34 A.3d 482, 486 (Del. 2011); *see also Wacht v. Continental Hosts, Ltd.*, 1994 WL 728836, at *2 (Del. Ch. Dec. 23, 1994); *Trans World Airlines, Inc. v. Summa Corp.*, 1987 WL 5778, at *1, *4 (Del. Ch. Jan. 21, 1987), *aff'd*, 540 A.2d 403 (Del. 1988).

[83] *Summa Corp. v. Trans World Airline, Inc.*, 540 A.2d 403, 409 (Del. 1988) (citing *Lynch v. Vickers Energy Corp.*, 429 A.2d 497, 506 (Del. 1981)).

[84] *Id.* (citing *Moskowitz*, 391 A.2d at 211 (Del. 1978)).; *see also Citadel Hldg. Corp. v. Roven*, 603 A.2d 818, 826 (Del. 1992) (observing that "the trial court has some discretion in fixing the amount of interest where there has been inordinate delay caused by one of the parties" but that "the determination of the date when payment was due is ordinarily a question of law subject to plenary review" on appeal (citing *Watkins v. Beatrice Cos., Inc.*, 560 A.2d 1016 (Del. 1989)).

[85] Defs.' Opening Br. at 33.

[86] Defs.' Reply Br. at 20–21.

21

The Non-Settling Defendants base this argument on a 1986 wrongful death case out of the Delaware Superior Court, *Kunstek v. Alpha-X Corp.*[87] There, the Superior Court declined to award prejudgment interest on the wrongful death award that was not "readily ascertainable."[88] The court observed that arriving at an exact figure required "complex computation[s]" and difficult estimations of lost support, pay increases, consumption, and other factors.[89]

*Kunstek* is limited to its facts. A few years after *Kunstek*, the Superior Court appeared to cabin its holding to circumstances where "a claim calls for commingling damages for personal injuries and economic loss arising therefrom or the complex computations required in determining economic loss relating to a death[.]"[90] That does not describe this case.

Moreover, *Kunstek* seems based on the "historic rule" that treated prejudgment interest as a "penalty on defendants who failed to pay promptly" that "would be awarded only if damages were 'liquidated' or 'ascertainable.'"[91] Over the course of the last century, courts came to view prejudgment interest not as a penalty but as a

---

[87] 1986 WL 5875 (Del. Super. Ct. May 15, 1986). The cases relied on by the court in *Kunstek* are all wrongful death or personal injury cases. *See Lum v. Nationwide Mut. Ins. Co.*, 1982 WL 1585 (Del. Super. Ct. Apr. 27, 1982)*, aff'd,* 461 A.2d 693 (Del. 1983) (holding no prejudgment interest on complex wrongful death suit); *Harris v. Capano Hldgs., Inc.,* 1981 WL 1724 (Del. Super. Ct. Nov. 17, 1981) (same for personal injury).

[88] *Kunstek*, 1986 WL 5875, at *1.

[89] *Id*.

[90] *Nutt v. GAF Corp.*, 1987 WL 12419, at *1 (Del. Super. Ct. May 21, 1987).

[91] *Restatement (Third) of Torts: Remedies* § 14 cmt. c (Am. L. Inst., Tentative Draft No. 2, 2023).

form of compensation.[92]  Delaware courts came to view prejudgment interest as serving both compensatory and disgorgement purposes.[93]  Indeed, courts have noted a long history under Delaware law of awarding prejudgment interest as a matter of right without regard to the nature of the underlying damages.[94]  Given the antiquated reasoning on which *Kunstek* rests, this court should be reluctant to apply its holding to new circumstances.

Although the Non-Settling Defendants' authority does not support their position, it is worth questioning whether the Class has a right to prejudgment interest on the nominal damages.  Both the compensatory and disgorgement purposes of prejudgment interest arise from the premise that the damages award was "plaintiff's money"—money that the plaintiff would have had in her possession absent wrongdoing.  That purpose is not served if nominal damages are merely symbolic.  This begs the question of the nature of the *Weinberger*-style per-share nominal damages for disclosure violations:  What purpose do they serve?

*Weinberger* damages for disclosure violations are not merely symbolic, as Vice Chancellor Laster persuasively concluded in *Columbia II*.[95]  There, as here, the court

---

[92] *Id.* (discussing the evolution of the doctrine of prejudgment interest, observing that "[c]ourts and legislatures increasingly recognized that interest is not a penalty, but an essential element of full compensation").

[93] *See Moskowitz*, 391 A.2d at 210.

[94] *See generally Super. Tube Co. v. Del. Aircraft Indus.*, 60 F.Supp.573 (D. Del. 1945) (cataloguing centuries of cases applying prejudgment interest without regard to the nature of underlying damages); *E. M. Fleischmann Lumber Corp. v. Resources Corp. Int'l*, 114 F.Supp. 843 (D. Del. 1953) (same).

[95] 299 A.3d at 409 (Del. Ch. 2023).

awarded per-share "nominal" damages for disclosure violations, which the Vice Chancellor calculated as $0.50 per share or 1.96% of the equity value.[96] In arriving at this outcome, the Vice Chancellor helpfully identified multiple throughlines connecting the Post-Trial Opinion, *Weinberger*, and other decisions of this court awarding damages for disclosure violations.[97] Each decision based the per-share award on "contemporaneous valuations of the target company"[98] and the "back-and-forth negotiations" between the parties.[99] The Post-Trial Opinion described the per-share award as a "division of the merger surplus[.]"[100] As the Vice Chancellor held in *Columbia II*, the cases collectively support a rule that "when disclosure violations have deprived stockholders of their ability to cast an informed vote on a matter affecting their economic interests, then a court can award damages equal to a relatively small percentage of the equity value of each share."[101]

---

[96] *Id.* at 498.

[97] *Columbia II*, 299 A.3d. at 495–96 (discussing the Post-Trial Opinion; *Weinberger v. UOP, Inc.*, 1985 WL 11546 (Del. Ch. Jan. 30, 1985), *aff'd*, 497 A.2d 792 (Del. July 9, 1985) (TABLE); *Smith v. Shell Petroleum, Inc.*, 1990 WL 186446, at *5 (Del. Ch. Nov. 26, 1990), *aff'd,* 606 A.2d 112 (Del. 1992) (awarding $2 per share where the award was proportionate to headline value of undisclosed assets of $3 per share not reflected in share price); *Gaffin v. Teledyne, Inc.*, 1990 WL 195914, at *18 (Del. Ch. Dec. 4, 1990), *aff'd in part, rev'd in part on other grounds*, 611 A.2d 467 (Del. 1992) (reversing class-wide dimension of $1 per share award based on a lack of record evidence)).

[98] *Id.* at 496 (citing *Verition P'rs Master Fund Ltd. v. Aruba Networks, Inc.*, 210 A.3d 128, 137 (Del. 2019)); *see also id.* at 497 (citing *In re Dunkin' Donuts S'holders Litig.*, 1990 WL 189120, at *9 (Del. Ch. Nov. 27, 1990) ("A buyer's internal valuations carry an extra imprimatur of reliability and are likely to provide more persuasive evidence of value than the buyer's actual bids[.]").

[99] *Columbia II*, 299 A.3d at 497.

[100] Post-Trial Opinion, 2023 WL 2518149, at *47.

[101] *Columbia II*, 299 A.3d at 409.

The court's analysis in *Columbia II* reveals one implied justification for the methodologies employed when calculating *Weinberger* damages—that disclosure violations affecting votes on economic rights impair those economic rights. Under this justification, *Weinberger* damages are compensatory. The cases discussed in *Columbia II* suggest an additional justification for *Weinberger* damages—to redistribute merger consideration surplus retained due to wrongdoing. Under this justification, *Weinberger* damages are a form of disgorgement. In all events, *Columbia II* made clear that per-share "nominal" damages are not "symbolic." That is, it "is not the symbolic award of $1 that a court grants when no greater damages were suffered or proven."[102] Rather, it is nominal in the sense that it is a "relatively small percentage of the value of each share."[103]

Given the compensatory and disgorgement nature of *Weinberger* damages, there is no reason to conclude that prejudgment interest should not accrue on that amount.[104]

---

[102] *Columbia II*, 299 A.3d at 495 (citing *Macrophage Therapeutics, Inc. v. Goldberg*, 2021 WL 2582967, at *22 (Del. Ch. June 23, 2021); *Ravenswood Inv. Co., L.P. v. Est. of Winmill*, 2018 WL 1410860, at *25 (Del. Ch. Mar. 21, 2018); *Penn Mart Supermarkets, Inc. v. New Castle Shopping LLC*, 2005 WL 3502054, at *16 (Del. Ch. Dec. 15, 2005)).

[103] *Columbia II*, 299 A.3d at 409. For this reason, *Columbia II* advocated redubbing per-share nominal damages awarded in this context as "disclosure damages." *Id.* at 495. The court agrees that "disclosure damages" or "*Weinberger* damages" is more accurate.

[104] And to the extent Delaware courts must look to whether the damages awarded were "ascertainable" before a finding of liability, then the reasoning discussed above, along with the studies concerning the value of voting rights relied on by the Vice Chancellor as crosschecks in *Columbia II*, instructs that *Weinberger* damages are

25

## 2.     Equitable Interest On Merger Consideration

The Appraisal Petitioners request an order that they are entitled to equitable interest on the merger consideration if they elect the Class remedy.[105]

Awarding equitable interest is consistent with the purpose of awarding a prevailing party prejudgment interest.  Applied to this context, those purposes are to compensate the stockholder for the loss of its money and force the surviving company to relinquish the benefit of retaining it.  Here, Stollmeyer and Vista are adjudicated wrongdoers.  There is no equity in allowing them to retain the economic value of the merger consideration for the duration of the litigation.

*Manti Holdings, LLC v. Authentix Acquisition Company, Inc.* supports awarding equitable interest on the withheld Merger consideration.[106]   There, stockholders attempted to exercise their appraisal rights and abstained from receiving merger consideration.  Although the court ultimately concluded that the stockholders were barred from seeking appraisal under a stockholder agreement, the court awarded equitable interest at the legal rate on the withheld merger consideration from the date of the merger.  The court reasoned as follows:

> Through the 2017 Merger, the merger consideration became available to Petitioner.  Nonetheless, they had significant questions regarding their contractual and statutory rights and in good faith tested those rights by filing an appraisal petition.  The litigation required the resolution of several novel issues at the intersection of

sufficiently ascertainable.  *Columbia II*, 299 A.3d at 498 (discussing "[s]tudies in which scholars have valued voting rights").

[105] Pls.' Reply Br. at 24.

[106] 2020 WL 4596838 (Del. Ch. Aug. 11, 2020).

26

> contract and corporate law, and has been lengthy. The equities of the situation are this: the Petitioners were stripped of their stock and entitled to consideration therefore from the time of the 2017 Merger. *These funds of the Petitioners have been held by the Respondent for the duration of tis now-lengthy action. It would, to my mind, be inequitable not to award interest on that amount.* It is within the Court's discretion to award such interest.[107]

The Delaware Supreme Court affirmed the award of equitable interest. Examining "the totality of these circumstances," the high court observed that "although the merger consideration was deposited in a non-interest-bearing account, the fact remains that the Petitioners were deprived of the beneficial use of their property for an extended period of time to resolve a dispute regarding a merger agreement to which they did not agree[.]"[108] The court further observed that, during that period, the company and the acquiror "had the power to choose and control where the funds belonging to the Petitioners were deposited."[109]

*Mehta v. Smurfit–Stone Container Corporation* is also instructive.[110] There, the question was whether the surviving corporation was entitled to withhold the merger consideration from a former stockholder who demanded appraisal but failed to file an appraisal petition within the statutory time limit. The court ordered the company to pay the merger consideration, "plus an award of pre- and post-judgment

---

[107] *Id.* at *10 (emphasis added).

[108] *Manti Hldgs, LLC v. Authentix Acq. Co., Inc.*, 261 A.3d 1199, 1229 (Del. 2021).

[109] *Id.*

[110] 2014 WL 5438534 (Del. Ch. Oct. 20, 2014).

interest running from September 25, 2011, the day after the 120-day filing period ran, until the date of payment."[111]

*Manti* and *Mehta* weigh in favor of awarding equitable interest here. Here, as in *Manti*, the Appraisal Petitioners had significant questions regarding their rights and in good faith tested them. Moreover, unlike *Manti* and *Mehta*, Luxor prevailed on the fiduciary claims. Thus, Mindbody and Vista obtained the economic benefit of holding petitioners' merger consideration in a wrongful merger.

As Class members, the Appraisal Petitioners are entitled to elect a remedy that compensates them for the adjudicated appropriate value of the merger consideration ($37.50 per share). If the Appraisal Petitioners opt for the Merger consideration plus Class damages, then they are owed equitable interest on the withheld merger consideration for the appraisal shares.

### 3. Tolling Interest

The court has deconsolidated the fiduciary and appraisal proceedings to allow for an immediate appeal of the Post-Trial Opinion. An immediate appeal would help inform the Appraisal Petitioners' election concerning the Class remedy and promote judicial economy. But it would also delay resolution of the appraisal proceeding. Mindbody—or, the real party in interest, Vista—therefore asks that the court toll interest in the appraisal proceeding pending the Appraisal Petitioners' election of remedies.[112]

---

[111] *Id.* at *6.

[112] Defs.' Opening Br. at 39.

28

The court is sympathetic to Vista's concern. Of course, the appraisal statute offers one way to address that concern. Section 262(h) permits a corporation to prepay appraisal claimants in an amount of the corporation's choosing to stop accrual of interest.[113] And Mindbody has taken advantage of that statute to a degree.[114] That said, if appeal of the fiduciary action or time spent while the Appraisal Petitioners determine whether to elect the Class remedy has the effect of delaying the appraisal action, then tolling arguments might resonate, and Vista may reassert them after the Appraisal Petitioners make their election.[115]

**D. Costs**

The Post-Trial Opinion awarded costs to Luxor under Court of Chancery Rule 54(d).[116] "Delaware law dictates that, in fee shifting cases, a judge determine whether the fees requested are reasonable."[117] "The trial court has broad discretion in

---

[113] 8 *Del. C.* § 262(h).

[114] *See* Dkt. 499 (Blumberg Aff.) ¶ 13.

[115] *See generally Moskowitz*, 391 A.2d at 211 (identifying "whether the plaintiff has been guilty of delay in pursuing his claim" as a factor to consider when computing prejudgment interest, and noting that "[w]hile interest is a matter of right in Delaware, the Trial Court does have some discretion in determining the amount of interest where there has been undue delay in the process of a lawsuit . . . ; for it is improper for a plaintiff to benefit by his failure to prosecute his own claim" (citation omitted)).

[116] Post-Trial Op., 2023 WL 2518149, at *48; Ct. Ch. R. 54(d).

[117] *Mahani v. Edix Media Gp., Inc.*, 935 A.2d 242, 245 (Del. 2007); *Peyton v. William C. Peyton Corp.*, 8 A.2d 89, 91–92 (Del. 1939) ('[T]he Court should have authority to consider and determine the reasonableness of the [costs], where such expense is objected to as being excessive."); *Gaffin v. Teledyne, Inc.,* 1993 WL 271443, at *2 (Del. Ch. July 13, 1993) (reviewing reasonableness of costs).

determining the amount of fees and expenses to award."[118]  Prevailing party costs under Rule 54(d) do not cover all litigation expenses, but rather, only those "necessarily incurred in the assertion of [the prevailing party's] rights in court."[119]

Co-Lead Counsel submitted affidavits itemizing $180,301.24 in costs recoverable under Court of Chancery Rule 54(d).[120]  The Non-Settling Defendants challenge only $32,657.80 of that amount on the ground that it was incurred before January 18, 2022,[121] and thus previously reimbursed to counsel from the settlement fund.  Luxor argues that, effectively, the Class covered this portion of the recoverable costs, which the Post-Trial Opinion assessed against the Non-Settling Defendants, and thus the Non-Settling Defendants should not reimburse the Class.  Luxor's position is not unreasonable, but it is inconsistent with the court's Order and Final Judgment approving the settlement.  That Order provided that the $32,657.80 in "Litigation Expenses shall be paid solely out of the Settlement Fund."[122]  Luxor is not entitled to the $32,657.80 that the court previously ordered be paid from the settlement fund.

---

[118] *Black v. Staffieri*, 2014 WL 814122, at *4 (Del. Feb. 27, 2014); *see also Lynch v. Gonzalez*, 2020 WL 5587716, at *7 (Del. Ch. Sept. 18, 2020), *aff'd*, 253 A.3d 556 (Del. 2021) (noting the court's discretion in awarding costs under Rule 54(d)).

[119] *Donovan v. Delaware Water & Air Resources Corn.*, 358 A.2d 717, 723 (Del. 1976)

[120] Dkt. No. 499 (Friedlander Aff. & Blumberg Aff.); Pls.' Opening Br. at 26.

[121] Defs.' Opening Br. at 32–33.

[122] Dkt. 481 ¶ 12.

### E.  Attorney's Fees

Co-Lead Counsel request a fee award equal to 33% of the $1 per-share Class remedy excluding shares held by any Appraisal Petitioner.[123]

"The Court of Chancery has broad discretion in fixing the amount of attorney fees to be awarded."[124]  In exercising this discretion, the Court applies the five *Sugarland* factors: "1) the results achieved; 2) the time and effort of counsel; 3) the relative complexities of the litigation; 4) any contingency factor; and 5) the standing and ability of counsel involved."[125]

When the benefit achieved is quantifiable, "*Sugarland* calls for an award of attorney['s] fees based upon a percentage of the benefit."[126]  To select the appropriate percentage, this court follows the stage-of-case method set out in *Americas Mining Corp.*[127]  Under that method, this court awards a percentage-based fee that turns on the stage of the litigation and efforts undertaken by counsel.[128]  Those percentages range from 10% for an early-stage settlement to a maximum of 33% for a post-trial adjudication.[129]  "Other *Sugarland* factors may cause the court to adjust the

---

[123] Pls.' Opening Br. at 26 –33; Pls.' Reply Br. at 32–34.

[124] *Johnston v. Arbitrium (Cayman Islands) Handels AG*, 720 A.2d 542, 547 (Del. 1998).

[125] *Ams. Mining Corp. v. Theriault*, 51 A.3d 1213, 1254 (Del. 2012) (*citing Sugarland Industries Inc. v. Thomas*, 420 A.2d 142, 149–50 (Del. 1980)).

[126] *In re Activision Blizzard, Inc. S'holder Litig.*, 124 A.3d 1025, 1070 (Del. Ch. 2015).

[127] *Ams. Mining Corp.*, 51 A.3d 1213.

[128] *In re Dell Techs. Inc. Class V S'holder Litig.*, 300 A.3d 679, 687 (Del. Ch. 2023).

[129] *Ams. Mining Corp.*, 51 A.3d at 1259–60; *Dell,* 300 A.3d at 699.

indicative fee up or down, but the starting point under *Americas Mining* is a percentage calculation."[130]

Under this approach, which aligns the interests of counsel with the interests of the stockholders, "[a] percentage of a low or ordinary recovery will produce a low or ordinary fee; the same percentage of an exceptional recovery will produce an exceptional fee. The wealth proposition for [counsel] is simple: If you want more for yourself, get more for those whom you represent."[131]

This case went as far as a case can go before a trial court. In these circumstances, it is appropriate to award fees in the amount of the maximum percentage of the common fund.[132] None of the other *Sugarland* factors warrant a downward adjustment.

Co-Lead Counsel's request for an award of 33% of the common fund excluding damages payable to Appraisal Petitioners is granted.[133]

---

[130] *Dell,* 300 A.3d at 692 (quoting *In re Orchard Enters. Inc. S'holder Litig.*, 2014 WL 4181912, at *8 (Del. Ch. Aug. 22, 2014)).

[131] *Id.*

[132] *See generally* Pls.' Opening Br. at 29–32 (citing cases).

[133] The Non-Settling Defendants request that the court order Co-Lead Counsel to disclose their fee agreement. They suspect that Co-Lead Counsel did not represent the Appraisal Petitioners on a fully contingent basis and they demand that the fee agreement be disclosed to inform the fee award. Co-Lead Counsel represented at oral argument that, upon personal review of the appraisal fee arrangements, the Appraisal Petitioners' fee arrangements were entirely contingent. June 5, 2023 Hr'g Tr. at 70:16–24. Given this representation, the court the Non-Settling Defendants' request for discovery.

## III.    CONCLUSION

The Non-Settling Defendants are not entitled to a settlement credit. The Appraisal Petitioners may elect to receive the merger consideration and Class damages. The fiduciary and appraisal actions shall be deconsolidated, allowing for immediate appeal of the Post-Trial Opinion. If Luxor elects to receive the Class damages and merger consideration, then Luxor is entitled to equitable interest. Prejudgment interest is awarded on both the process damages and disclosure damages. The Non-Settling Defendants may re-assert their tolling arguments if the Appraisal Petitioners pursue appraisal. Luxor's proposed bill of costs is approved except for amounts previously reimbursed from the Settlement Fund. Co-Lead Counsel is entitled to a fee award equal to 33% of the damages award excluding any damages payable to the Appraisal Petitioners. The parties are instructed to prepare a form of final order consistent with this decision within five days. It is possible that the court failed to resolve one of the many issues raised in the rich thicket of disputes concerning the form of final order; the parties' briefing did not join issues neatly. If the parties believe that the court missed something, then they are instructed to contact Chambers immediately to schedule a status conference.